IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re TEKLEBERHAN SEBHATU,

    Petitioner.

_____/

No. C 09-80287 CRB

**ORDER GRANTING PETITION TO CHANGE BIRTH DATE ON NATURALIZATION CERTIFICATE**

Now pending before this court is Petitioner Tekleberhan Sebhatu's Form N-565 Application for a Replacement Naturalization/Citizenship Document. Sebhatu asks this Court to amend his Certificate of Naturalization so that it reflects his correct birth date. For the reasons discussed below, the Court GRANTS Sebhatu's request.

**Background**

Petitioner was born in Eritrea and came to the United States as a student in April 1973. He became a naturalized United States citizen on February 11, 1986. On his petition for naturalization and on several other immigration documents filed with the government in the late 1970s and 1980s, Sebhatu stated that his date of birth was December 19, 1953. His Certificate of Naturalization therefore lists that date as his date of birth.

Sebhatu now maintains that September 11, 1948, not December 19, 1953, is his true date of birth and asks this Court to amend his Certificate of Naturalization to reflect the correct date. According to Sebhatu, he incorrectly reported his birth date for many years because he was unsure of his actual date of birth when he initially entered the United States.

Although he learned his true date of birth sometime after arriving in the U.S., he states that he did not seek to amend his birth date on his Certificate of Naturalization until 2009 because he only recently obtained an official Eritrean birth certificate that verifies his true date of birth. He attached a copy of his official Eritrean birth certificate to his petition.

The government objects to the requested change. It notes that Sebhatu waited over twenty years to request the change to his birth date and that he repeatedly listed the allegedly incorrect date on immigration documents. The government also points out that a change to Sebhatu's birth date would render him eligible for Social Security benefits this year, rather than five years from now.

To resolve this dispute, the Court conducted two evidentiary hearings. At the first hearing, held on February 19, 2010, Sebhatu testified that he was born in a small village near Asmara, Eritrea. He averred that, at the time of his birth, his village did not keep official birth records. As a result, Sebhatu contends, he was unaware of his precise birth date upon his entry into the United States and was forced to estimate it.

Sebhatu testified further that he became aware of his true birth date after arriving in the U.S., but that he had no proof of his correct birth date until August 2009, when he obtained an official birth certificate from the Eritrean government. He first learned that such certificates were available in 2004 and traveled to Eritrea to obtain the document as soon as he was able to do so. According to Sebhatu, Eritrean officials issued the official birth certificate, which lists September 11, 1948 as Sebhatu's date of birth, after a hearing at which Sebhatu and three witnesses testified. Upon his return to the U.S. with the official birth certificate, he filed the application for a new naturalization certificate that is at issue in this case.

Sebhatu concluded his testimony at the initial evidentiary hearing by informing the Court that he has six brothers and two sisters, including three that reside in the Bay Area. He stated that these siblings could provide testimony in support of his petition at a later hearing.

The Court determined that testimony from Sebhatu's siblings would be useful. It therefore ordered Sebhatu to produce his brother and two sisters at a second evidentiary hearing, to be held on April 2, 2010.

At the April 2nd hearing, Sebhatu's sisters, Lemlem Sebhatu Woldemariam and Yirgalem Sebhatu, and his brother, Fasil Sebhatu Woldemariam, appeared. Each stated that he or she was a sibling of the Petitioner. They also testified as to their own dates of birth, and, as requested by the Court, brought Eritrean and U.S. passports and U.S. certificates of naturalization that verified their asserted birth dates. Lastly, they each confirmed (by reference to their own dates of birth) that Petitioner had been born in the late 1940s, rather than the early 1950s.

Based on the foregoing evidence, Sebhatu asks this Court to grant his request to amend his Certificate of Naturalization to reflect a birth date of September 11, 1948.

**Discussion**

**1.   Legal Standard[1]**

A correction to a naturalization certificate is warranted where information on the certificate "does not conform to facts shown on the application for naturalization or a clerical error was made in preparing the certificate." 8 C.F.R. § 338.5. This Court and others have interpreted § 338.5 as permitting amendment of a naturalization certificate upon "a finding of an honest mistake made by the petitioner seeking amendment." *See In re Taymuree*, No. 09-3420, 2009 WL 3817922, at *2 (N.D. Cal. Nov. 12, 2009); *Kouanchao v. United States Citizenship and Immigration Services*, 358 F.Supp.2d 837 (D. Minn. 2005); *Varghai v. INS, District Director*, 932 F.Supp. 1245, 1246 (D. Or. 1996).

The petitioner bears the burden of establishing that amendment is appropriate. *See In re Taymuree*, 2009 WL 3817922, at *2. To do so, he must present clear and convincing evidence of his correct date of birth. *See Hussain v. United States Citizenship & Immigration*

---

[1] This Court has jurisdiction to amend a pre-1990 naturalization order, such as the one at issue in this case. *See In re Taymuree*, No. 09-3420, 2009 WL 3817922, at *2 (N.D. Cal. Nov. 12, 2009) (citing *Matter of Shrewsbury*, 77 F.3d 490 (9th Cir. 1996) (unpublished opinion)).

*Services*, 541 F.Supp.2d 1082, 1087 (D. Minn. 2008).[2] He must also demonstrate that he did not act fraudulently or in bad faith either when he initially applied for naturalization or when he later sought amendment of his naturalization certificate. *See id.*

**2.   Analysis**

The Court finds that Petitioner has met his burden of establishing that September 11, 1948 is his correct birthdate and that the erroneous date listed on his certificate of naturalization resulted from an honest mistake. The Court likewise finds that Petitioner has not acted fraudulently or in bad faith in seeking to amend his naturalization certificate. Accordingly, the Court grants his petition to correct his naturalization certificate.

Sebhatu presented extensive evidence of his true birth date. First, he supplied an official birth certificate from the Municipality of Asmara, which lists September 11, 1948 as his date of birth. This document, which bears various seals of the Eritrean government, was certified as authentic by consulate staff at the U.S. Embassy in Eritrea in 2009. The court also accepts as credible Sebhatu's testimony that the Eritrean government issued his birth certificate after an official hearing at which three witnesses with knowledge Sebhatu's true birth date testified. For these reasons, the Court deems Sebhatu's Eritrean birth certificate to be an authentic document.

Second, Sebhatu testified on his own behalf that September 11, 1948, not December 19, 1953, is his correct birthdate. The Court finds this testimony credible. Sebhatu provided a reasonable explanation for his listing of an erroneous birth date on his application for naturalization and other immigration documents. He explained that his small village, like many in Africa, did not keep birth records. As a result, he was unaware of his precise birth date upon arriving in the United States and therefore had to provide an estimate. Only later did he learn that that estimate was inaccurate.

---

[2] Some courts have required a petitioner to provide "unequivocal evidence" of his true date of birth. *See, e.g., In re Osman*, No. 07-MC-24S, 2007 WL 1480966, at *1 (W.D.N.Y. May 20, 2007). Here, the evidence establishing Sebhatu's correct date of birth is both "clear and convincing" and "unequivocal." As a result, Sebhatu's petition succeeds under either standard.

4

The government argues that, even if Sebhatu was mistaken about his birth date when he entered the U.S., he should have listed his correct birth date on relevant documents and sought appropriate amendment of others as soon as he became aware of the correct date. In other words, Sebhatu's repeated use of an incorrect birth date and his failure to seek amendment of his naturalization certificate for over twenty years indicate, in the government's view, that his testimony is not credible.

The Court finds this argument unpersuasive. Even assuming that Sebhatu learned his true birth date shortly after arriving in the United States, his failure to correct or amend his birth date on subsequent documents was reasonable given that he had no official documents establishing his true birth date until he obtained the recently-acquired Eritrean birth certificate. *See Nguyen v. United States Dep't of Homeland Security*, No. 06-118, 2007 WL 2156649, at *5 (N.D.N.Y. July 25, 2007) (granting petition for correction even though petitioner provided incorrect birth date on several immigration documents over many years because "it [was] fair for him . . . to assume that [(1)] it would be very difficult to expose his misrepresentation without possessing proper documents" and (2) that providing inconsistent birthdates on immigration documents could subject him to "sanction or reprisal").

Like the petitioner in *Nguyen*, Sebhatu could have understandably feared "sanction or reprisal," including deportation, for providing inconsistent information on the documents he submitted to the United States government in the 1970s and 1980s, at least until he could acquire official proof of his true date of birth. It was likewise fair for him to assume that seeking to amend his immigration documents would have been futile absent an official record of his birth. Accordingly, it was reasonable for him to consistently list the same erroneous birth date on immigration documents and to wait to amend his naturalization certificate until he had acquired proper documentation from his native country. The Court accepts Sebhatu's testimony that he was not able to do so until the summer of 2009.

In short, the Court finds that Petitioner was a credible witness. His assertion that he was born on September 11, 1948 is therefore evidence of his true birth date.

5

1   The final evidence presented by Sebhatu to support his alleged birth date was the
2   testimony of his siblings. Each sibling stated that Sebhatu was their brother and that his birth
3   occurred sometime in the late 1940s, not the early 1950s. They bolstered these assertions by
4   attesting to their own dates of birth and by providing documentation that confirmed their
5   alleged birth dates.

6   The Court finds the testimony of Sebhatu's siblings, like Sebhatu's testimony, to be
7   credible and therefore supportive of his petition. In addition to the documentary evidence
8   that confirmed portions of their testimony, the witnesses' demeanors and their responses to
9   the Court's questions indicated to the Court that they were testifying truthfully.

10  The only evidence that suggested otherwise was an immigration document presented
11  by the government during its cross-examination of Sebhatu's brother, Fasil. In that
12  document, which Fasil completed in the 1980s, he failed to list the Petitioner as his brother.
13  The Court, however, accepts Fasil's explanation that his failure to list Petitioner on the form
14  was an oversight. The strong physical resemblance between Petitioner and Fasil sufficiently
15  demonstrates to the Court that the two are, in fact, brothers. Moreover, Fasil received no
16  apparent benefit from excluding his brother's name on the form, indicating that his error was
17  not intentional or made in bad faith.

18  In sum, the Court finds that Sebhatu's Eritrean birth certificate, his credible testimony,
19  and the credible testimony of his siblings provide clear and convincing evidence that
20  Sebhatu's true birth date is September 11, 1948.

21  The Court likewise finds that Sebhatu did not act fraudulently or in bad faith when he
22  initially applied for a naturalization certificate and is not acting in bad faith in seeking
23  amendment of that certificate. There is no evidence that Sebhatu benefited from providing
24  an incorrect birth date on his application for naturalization in 1983 or on any of the other
25  immigration documents that he completed in the 1970s and 1980s. As noted, the Court
26  accepts Sebhatu's testimony that he was unaware of his true birth date when he came to the
27  United States, that he was therefore required to estimate it, and that he was unable obtain an
28  official birth certificate until recently. For these reasons, the Court finds that the listing of an

6

erroneous birth date on Sebhatu's Certificate of Naturalization resulted from an "honest mistake," and not from fraud or an act of bad faith.

The Court also finds that Sebhatu is not acting in bad faith in seeking amendment. As discussed above, clear and convincing evidence supports Sebhatu's contention that his actual birth date is September 11, 1948. Given that Sebhatu's certificate of naturalization does not reflect his correct birth date, his decision to seek amendment is not surprising. In addition, it was reasonable for Sebhatu to postpone his request for amendment until he obtained an official birth certificate, an act he accomplished only recently. Taken together, these facts establish that Sebhatu's petition for amendment is not motivated by bad faith or fraud, but, instead, by an interest in correcting a longstanding error.

Arguing to the contrary, the government notes that "the requested change would render Mr. Sebhatu eligible for Social Security benefits this year, rather than five years from now." Objection to Petition at 4. The government thereby implies that Sebhatu's motivation in seeking to amend his naturalization certificate is to fraudulently acquire social security benefits prematurely.

The Court rejects this implication, for several reasons. First, Sebhatu has gone to significant trouble and expense to establish his correct birth date. He traveled to Eritrea to acquire an official birth certificate from his native country. While in Eritrea, he participated in an official hearing with government officials and, as part of that hearing, obtained the help of three witnesses. He also went so far as to have the birth certificate authenticated by staff members at the U.S. Embassy. In addition to these acts, Sebhatu traveled from Oregon to Northern California for the Court's second evidentiary hearing and (as requested by the Court) arranged for three siblings to appear on his behalf. The time and expense involved in these efforts indicate to the Court that Sebhatu is motivated by his interest in correcting a longstanding error in his personal history, not by a bad faith intent to acquire a few extra years of social security benefits.

Second, Sebhatu indicated in his response to the government's Objection that he "[has] no intention to take any benefits that Social Security might offer at this time and that

7

1 was not [his] intention to file the petition." Reply at 1.  Based on Sebhatu's demeanor and
2 testimony at the Court's evidentiary hearings, the Court finds him to be a credible witness.  It
3 therefore accepts as true his statement that his request for a change to his date of birth was
4 not motivated by an intent to acquire Social Security benefits prematurely.

5 Finally, the Court notes that, any time a petitioner seeks to amend his naturalization
6 certificate to reflect an earlier birth date, the proposed change will result in the Petitioner's
7 being eligible for social security benefits sooner than he would have been absent the
8 amendment.  Where, as in this case, there is significant evidence supporting a Petitioner's
9 request for amendment and little or no evidence that petitioner is being less than forthright,
10 this Court is unable to find that the requested change alone (and the resulting early receipt of
11 benefits) is sufficient to support a finding of bad faith or fraud.

12 In sum, the Court finds that Sebhatu's actual birth date is September 11, 1948 and
13 that the incorrect birth date listed on his naturalization certificate resulted from an "honest
14 mistake."  A correction is therefore appropriate.

### Conclusion

16 For the foregoing reasons, the Court GRANTS Sebhatu's Petition to change his date
17 of birth on his Certificate of Naturalization.  The Court further ORDERS the Clerk of this
18 Court to serve the District Director with a copy of this Order to be placed in Petitioner's
19 Service file pursuant to 8 C.F.R. § 334.16(b).

20 **IT IS SO ORDERED.**

23 Dated: April 20, 2010            CHARLES R. BREYER
                                    UNITED STATES DISTRICT JUDGE

G:\CRBALL\2009\80287\Order Granting Petition.wpd        8